UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUIS ROSALES,

                                  Plaintiff,

                                                                                     <u>DECISION AND ORDER</u>

                                                                                     08-CV-6113L

              v.

PAUL H. KIKENDALL,
DONALD SELSKY,
RYAN ENGLISH,
ROBERT A. KIRKPATRICK
M. KEARNEY,
KEN KIELISZEK,
L. HIGLEY,
SERGEANT ANDRUSZ,
CORRECTIONAL OFFICER BENSON,
CORRECTIONAL OFFICER STREIT,
J. KENNEDY,
LIEUTENANT KNEENAN,

                                  Defendants.
_____

       Plaintiff, Luis Rosales, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that his constitutional rights have been violated in a number of respects in connection with certain incidents that occurred in 2006, while plaintiff was confined at Wende Correctional Facility. Defendants have moved to dismiss some of plaintiff's claims for failure to

state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## BACKGROUND

Because this is a motion to dismiss under Rule 12(b)(6), the court assumes the truth of the allegations of the complaint. *See Fitzgerald v. Barnstable School Committee*, ___ U.S. ___, 129 S.Ct. 788, 792 (2009). In general, plaintiff's claims here arise out of alleged threats and harassment that he received at the hands of certain DOCS employees at Wende. Plaintiff alleges that what prompted this harassment was his position and activities as an inmate grievance representative.

Plaintiff alleges that he complained about this harassment, but that nothing was done in response. He further alleges that in October 2006, he was given a false misbehavior report, again in retaliation for his activities on behalf of other inmates.

Plaintiff alleges that at the subsequent Tier III hearing on that misbehavior report, his due process rights were violated in a number of respects. Defendant J. Kennedy, the hearing officer, found plaintiff guilty of all but one of the charges against him (which included refusing to obey a direct order and creating a disturbance), and sentenced plaintiff to four months' confinement in the

---

[1]Although defendants' notice motion is styled simply as a motion to dismiss, *see* Dkt. #14, and their memorandum of law concludes that "[p]laintiff's complaint should be dismissed," Dkt. #16 at 14, their motion papers only address some of plaintiff's claims against some of the defendants. The Court therefore does not construe the motion as a motion to dismiss the entire complaint, nor do I address those claims or defendants not discussed in defendants' motion.

Special Housing Unit ("SHU"), as well as a two-year suspension from participation in any grievance-related job.

After unsuccessfully exhausting his administrative appeals, plaintiff filed an Article 78 proceeding in state court challenging Kennedy's disposition. In October 2007, the state court reversed that disposition and ordered that Kennedy's findings be expunged from plaintiff's records. The state court decision does not appear to be in the record before me, nor is it clear what the basis for the court's decision was. Plaintiff also does not appear to allege the extent to which he served his SHU sentence by the time the state court issued its decision.

Plaintiff also alleges that in December 2007, another inmate, Chris Hynes, mailed plaintiff's wife a copy of a letter that he had been given by a third inmate, "Mohamad Abbas," Complaint ¶ 47, that Abbas had allegedly written to defendant Kearney, a DOCS Captain at Wende. In the letter, Abbas allegedly stated that he had witnessed the events leading to the misbehavior report issued against plaintiff, and that he wanted to testify at plaintiff's Tier III hearing. Plaintiff alleges that this letter was never turned over to him and that he was unaware of its existence until after his wife received a copy of it from Hynes.

Based on these allegations, plaintiff has sued twelve individual defendants, all of whom were at all relevant times employed by DOCS. The complaint asserts four causes of action, the first of which alleges that seven of the defendants retaliated against plaintiff for his participation in the DOCS grievance program as an inmate grievance representative. Complaint ¶ 49. The second cause of action alleges that defendant Kearney violated plaintiff's rights by either destroying or failing to turn over to plaintiff the letter that he allegedly received from inmate Abbas.

The third cause of action alleges that plaintiff's due process rights were violated in a number of respects in connection with his Tier III hearing. Plaintiff alleges that he was denied his rights to adequate legal assistance, to call witnesses and present evidence, to an impartial hearing officer, and to a fair and timely hearing. The fourth cause of action is asserted against several supervisory defendants, and alleges that they failed to remedy these other violations of plaintiff's rights. Plaintiff seeks $284,000 in compensatory damages, and $260,000 in punitive damages, as well as unspecified injunctive relief.

**DISCUSSION**

**I. Motions to Dismiss Under Rule 12(b)(6): General Principles**

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the facts in the complaint are presumed to be true, and all reasonable inferences are drawn in the plaintiff's favor. *See E.E.O.C. v. Staten Island Savings Bank*, 207 F.3d 144, 148 (2d Cir. 2000). A complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 171 (2d Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because plaintiff appears *pro se*, the complaint must be liberally construed in his favor, and held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). The Court interprets complaints submitted by pro se

plaintiffs to raise the strongest arguments that they suggest. *Guarneri v. West*, 518 F.Supp.2d 514, 517 (W.D.N.Y. 2007).

"The rules concerning liberal construction of *pro se* complaints have their limits, however." *Id.* In order to survive a motion to dismiss for failure to state a claim, the complaint "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." *Holland v. Goord*, No. 05-CV-6295, 2006 WL 1983382 at *2 (W.D.N.Y. July 12, 2006) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987)). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal quotes and citations omitted).

**II. Conspiracy Claims**

Defendants move to dismiss plaintiff's conspiracy claims on the ground that plaintiff has not alleged sufficient facts to support a civil rights conspiracy claim. I agree.

All four of plaintiff's claims include some allegations of conspiracy, although none of them appear to rest entirely upon a conspiracy claim; rather, plaintiff appears to have simply added the word "conspired" to his litany of allegations. The first cause of action, for example, alleges that seven of the defendants "aided and abbeted [sic], allowed[,] approved, permitted, sanctioned, and conspired" to deprive plaintiff of his right "to be free from retaliation for participating in the DOCS

grievance program." Complaint ¶ 49. The other causes of action contain similar allegations. Each cause of action, then, alleges that defendants both violated plaintiff's civil rights, and conspired to do so.

To the extent that plaintiff alleges a conspiracy to violate his civil rights, I construe his claims to be asserted under 42 U.S.C. § 1985. *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) ("The plaintiffs' claim under 42 U.S.C. § 1983, which is styled 'Conspiracy to Violate Civil Rights,' should actually be stated as a claim under Section 1985, which applies specifically to conspiracies"), *cert. denied*, 540 U.S. 1110 (2004); *Doe v. Green*, 593 F.Supp.2d 523, 535 n.12 (W.D.N.Y. 2009). To make out a facially valid civil rights conspiracy claim under that statute, a plaintiff must allege: (1) a conspiracy (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby the plaintiff was injured in his person or property or deprived of a right or privilege of a citizen. *See United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). "In addition, the conspiracy [under § 1985] must be motivated by some class-based animus." *Iqbal*, 490 F.3d at 176 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *accord Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007).

Plaintiff's conspiracy allegations do not meet that standard. Plaintiff has alleged that defendants violated his constitutional rights in a number of ways, and has then simply inserted a conclusory allegation that those violations were committed pursuant to a conspiracy. Conspiracy allegations couched in such "generic and conclusory terms" are insufficient to make out a § 1985

claim. *Hawkins v. County of Oneida*, 497 F.Supp.2d 362, 379 (N.D.N.Y. 2007). *See Walker v. Jastremski*, 430 F.3d 560, 564 n. 5 (2d Cir. 2005) ("conclusory or general allegations are insufficient" to state a claim for conspiracy to violate the plaintiff's civil rights), *cert. denied*, 547 U.S. 1101 (2006); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss") (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)).

In addition, plaintiff has failed to allege any race- or class-based animus as required to support a § 1985 conspiracy claim. Plaintiff's civil rights conspiracy claims are therefore dismissed for that reason as well. *See Farber v. City of Paterson*, 440 F.3d 131, 135 (2d Cir. 2006); *Davis v. Travis*, No. 07 Civ. 3047, 2008 WL 5191074, at *4 (S.D.N.Y. Dec. 3, 2008).

**III. Official-Capacity Claims**

All the defendants have moved to dismiss the claims against them in their official capacities as barred by the Eleventh Amendment to the United States Constitution, which generally bars suits for damages against a state without the state's consent. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "Claims against state employees in their official capacity are deemed claims against the state itself," and are likewise barred by the Eleventh Amendment. *Nash v. McGinnis*, 585 F.Supp.2d 455, 464 (W.D.N.Y. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

In his response to defendants' motion, plaintiff states that he "withdraw[s] the claims he raised against the defendants in their official capacities." Dkt. #19 at 17. Accordingly, plaintiff's official-capacity claims are deemed to be withdrawn and are dismissed.

**IV. Claims of Verbal Harassment and Threats**

Defendants contend that plaintiff's claims alleging harassment and threats against him by defendants Kieliszek, Higley, Andrusz and Benson must be dismissed on the ground that allegations of verbal harassment do not state a constitutional claim.

In this Circuit, allegations of verbal harassment or threats are generally an insufficient basis for an inmate's § 1983 claim. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed"); *Tafari v. Paul*, No. 06-CV-0603, 2009 WL 3260075, at *1 (W.D.N.Y. Oct. 8, 2009) (allegations of verbal harassment or abuse, "without a showing of an actual injury, are insufficient to support a § 1983 claim") (citing *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996)); *Alexander v. Deming*, No. 03-CV-0147, 2009 WL 1044561, at *5 (W.D.N.Y. Apr. 16, 2009) ("Courts within the Second Circuit have held that threats of disciplinary action and verbal harassment without injury are insufficient to state a constitutional violation") (citing cases).

The fact that plaintiff alleges that this verbal harassment was motivated by his activities in his role as inmate grievance representative does not alter that result. Assuming, without deciding, that those activities were constitutionally protected, verbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim.

*See Cabassa v. Smith*, No. __, 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009) ("Courts addressing claims of verbal threats and harassment advanced to support First Amendment retaliation claims have uniformly held that such conduct is not sufficiently serious to meet this standard") (collecting cases). Accordingly, to the extent that plaintiff bases his claims solely on allegations of verbal harassment or threats, those claims are dismissed.

**V. Personal Involvement of Kearney, English, Kikendall, Kirkpatrick, and Kneenan**

Defendants Kearney, English, Kikendall, Kirkpatrick, and Kneenan move to dismiss the claims against them on the ground that plaintiff has not alleged their personal involvement in the alleged constitutional violations. In any action under § 1983, the plaintiff must establish each defendant's personal involvement in the alleged constitutional deprivation in order to hold that defendant liable. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).

In assessing plaintiff's allegations, the Court must also be mindful of the standards set forth by the Supreme Court in *Twombly*. As the Court explained in that case, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." 550 U.S. at 570. A "plausible" entitlement to relief exists when the allegations in the complaint move the plaintiff's claims across the line separating the "conclusory" from the "factual," and the "factually neutral" from the "factually suggestive." *Id.* at 557 n.5. "[T]his plausibility standard governs claims brought even by *pro se* litigants." *Robles v. Bleau*, No. 9:07-CV-0464, 2008

WL 4693153, at *5 (N.D.N.Y. Oct.22, 2008) (citing *Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir. 2008), and *Boykin v. KeyCorp*, 521 F.3d 202, 215-16 (2d Cir. 2008)).

As stated, Captain Kearney was the alleged recipient of the letter from Abbas concerning the other inmate who allegedly indicated a willingness or desire to testify at plaintiff's disciplinary hearing. I agree with defendants that the claims against Kearney must be dismissed. To the extent that Kearney is alleged to have been personally involved in anything that went on here, his actions simply did not violate plaintiff's rights.

Plaintiff alleges that Kearney investigated plaintiff's grievance concerning the October 2006 misbehavior report, and stated that he found no evidence that defendants Benson and Andrusz had retaliated against plaintiff. Complaint ¶ 40. Plaintiff also alleges that Kearney failed to inform plaintiff that Kearney had received Abbas's letter stating that he wished to testify at plaintiff's hearing.

Those allegations fail to state a claim against Kearney. The mere fact that Kearney concluded that plaintiff had not been retaliated against by other officers does not amount to a constitutional violation by Kearney. In addition, assuming the truth of plaintiff's allegation that Kearney received Abbas's letter but failed to inform plaintiff of its existence, Kearney did not conduct plaintiff's Tier III hearing, and had no direct involvement in that hearing. There is no basis in plaintiff's allegations upon which to conclude that Kearney had any responsibility with respect to the conduct of the disciplinary proceedings against plaintiff.

Moreover, all that plaintiff has alleged about that letter is that Abbas said that he wanted to testify at plaintiff's hearing. There is no indication of what the substance of his testimony would

have been, much less that it would have been exculpatory with respect to plaintiff. Thus, plaintiff fails to show that he suffered any prejudice as a result of Kearney's alleged inaction, or that Kearney had reason to think that plaintiff was unaware of Abbas's existence, the fact that Abbas witnessed, or claimed to have witnessed, the relevant events, or that Abbas's testimony would tend to exculpate plaintiff.[2]

The claims against defendant Kikendall are similar, but even weaker. Plaintiff alleges simply that Kikendall, who is identified as an assistant commissioner at the DOCS Central Office in Albany, wrote to plaintiff on November 29, 2006, and informed him that he had investigated a complaint that plaintiff had submitted to DOCS officials concerning plaintiff's placement in SHU. Kikendall stated that he found no evidence to substantiate plaintiff's allegations of retaliation. Plaintiff's conclusory allegation that Kikendall "knew that the complaint was not investigated according to DOCS guidelines but ... sustained the investigation to cover up the defendants actions" is insufficient to show any knowing violation by Kikendall of plaintiff's rights, particularly under the pleading standards set forth in *Twombly*.

Defendant English, who is named in the first and fourth causes of action, is alleged to have been employed by DOCS as coordinator of the Inmate Grievance Program ("IGP"). Plaintiff alleges

---

[2]Although the Court of Appeals for the Seventh Circuit has held that "the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings," *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003), the Second Circuit does not appear to have addressed that question. Even if *Brady* principles did apply to plaintiff's Tier III proceedings, however, to establish Kearney's liability plaintiff would have to show that Kearney failed to disclose Abbas's letter with the intent of denying plaintiff a fair hearing. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). Plaintiff's allegations fail to make out a plausible claim that Kearney could have thought that his nondisclosure of Abbas's letter would render plaintiff's Tier III hearing unfair.

that on a certain occasion, he spoke to English about threats that had allegedly been made against plaintiff by defendants Higley and Kieliszek, who are alleged to have been employed as an "Inmate Grievance Sergeant" and as an "Inmate Grievance Supervisor" respectively. Dkt. #1-2 ¶¶ 7, 8. English allegedly promised to look into the matter but did nothing further. Plaintiff also alleges that he later wrote English a letter about continuing threats against him, and that English did not respond to his letter. Dkt. #1-2 ¶¶ 18, 25.

Those allegations are not sufficient to show personal involvement on English's part in any constitutional violations. There is no indication that English himself ever made any threats or took any action against plaintiff. The only allegation is, in short, that he failed to follow through on his promise to look into plaintiff's complaints. The law is well established, however, that "a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Swift v. Tweddell*, 582 F.Supp.2d 437, 445-46 (W.D.N.Y. 2008) (citing cases); *Bumpus v. Canfield*, 495 F.Supp.2d 316, 322 (W.D.N.Y. 2007) (allegation that defendant did not respond to inmate's letters alleging lack of medical attention was not enough to establish defendant's personal involvement in alleged violations).

Defendant Kirkpatrick was the Superintendent of Wende at the time of the relevant events. Like Kearney, he is alleged to have found no evidence that Benson and Andrusz had retaliated against plaintiff. Complaint ¶ 40. Plaintiff also alleges that he wrote to Kirkpatrick on several occasions, complaining about various matters, and that Kirkpatrick either did not respond at all, or simply forwarded plaintiff's letters to subordinates. *Id.* ¶¶ 12-17. In addition, plaintiff states that

on August 9, 2006, he spoke directly to Kirkpatrick about the alleged harassment that he was receiving from certain officers, and that Kirkpatrick took no action in response. *Id.* ¶ 20.

For many of the reasons already stated with respect to the other defendants, these allegations fail to show Kirkpatrick's personal involvement in the alleged constitutional violations. Neither Kirkpatrick's supervisory status nor his alleged failure to respond to plaintiff's complaints is enough to render him liable under § 1983. *See Vega v. Artus*, 610 F.Supp.2d 185, 199 (N.D.N.Y. 2009) (stating that facility superintendent's act of "referring [plaintiff's] letters to staff for investigation is not sufficient to establish [his] personal involvement"); *Brooks v. Chappius*, 450 F.Supp.2d 220, 226 (W.D.N.Y. 2006) ("Even the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement") (internal quotation marks omitted); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 374 (W.D.N.Y. 2005) ("the mere fact that a defendant may have been in a 'high position of authority is an insufficient basis for the imposition of personal liability' under § 1983") (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)); *Farid v. Goord*, 200 F.Supp.2d 220, 235 (W.D.N.Y. 2002) (dismissing claims of personal involvement against supervisory official who merely sent grievances "down the chain of command for investigation").

It is not clear from the complaint what position defendant Kneenan held, but he apparently worked at Wende in some capacity. Plaintiff alleges that he spoke to Kneenan during the same face-to-face meeting with Kirkpatrick on August 9, 2006. Complaint ¶ 20. Plaintiff also alleges that his wife talked to Kneenan by telephone in August or September 2006, concerning the problems that plaintiff was having with certain officers. Complaint ¶ 21. Plaintiff alleges that Kneenan did little if anything in response to any of these conversations. Since those allegations essentially echo some

of the allegations made against Kirkpatrick, they no more establish a claim against Kneenan than do plaintiff's allegations against Kirkpatrick.

## CONCLUSION

Defendants' motion to dismiss (Dkt. #14) is granted. Plaintiff's claims against defendants Kearney, English, Kikendall, Kirkpatrick, and Kneenan are dismissed in their entirety. Plaintiff's second cause of action, which is asserted only against defendant Kearney, is dismissed. Plaintiff's conspiracy claims, his claims against all defendants in their official capacities, and his claims based on alleged verbal harassment or threats, are also dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 6, 2010.