UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUIS ROSALES,

                Plaintiff,

    -vs-

SELSKY, KIELISZEK, HIGLEY, ANDRUSZ,
BENSON, STREIT and KENNEDY,

                Defendants.

**DECISION AND ORDER**
**No. 08-CV-6113(MAT)**

---

**I.    Introduction**

Pro se plaintiff Luis Rosales ("Rosales" or "Plaintiff") instituted this action (Dkt #1) pursuant to 42 U.S.C. § 1983 alleging that Defendants, employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), violated his constitutional rights while he was incarcerated at Wende Correctional Facility. On January 6, 2010, the Court (Larimer, D.J.) granted Defendants' partial motion to dismiss, terminating several of the defendants, along with Plaintiff's verbal harassment/threats claims, his conspiracy claims, and his official capacity claims. See Dkt #22. On September 7, 2010, the United States Court of Appeals for the Second Circuit dismissed Plaintiff's appeal. See Dkt #26.

There was no further action in this matter until a scheduling order was issued by Magistrate Judge Marian W. Payson on June 14, 2012. See Dkt #27. On January 22, 2013, Defendants filed a motion for summary judgment (Dkt #34) pursuant to Federal Rule of Civil

Procedure ("F.R.C.P.") 56(c) dismissing the complaint in its entirety. Plaintiff has opposed the motion.

On March 12, 2013, Plaintiff filed a motion to compel discovery (Dkt #40) seeking, inter alia, the pleadings and order from Plaintiff's state court challenge to the disciplinary proceeding at issue in this action. Magistrate Judge Payson issued a scheduling order on May 14, 2013.

On June 19, 2013, the matter was transferred to the undersigned. On June 26, 2013, the Court issued an order (Dkt #48) directing Defendants to produce the documents from Plaintiff's state court action referenced above, which Defendants previously had refused to produce, claiming they were either irrelevant or not in their possession. Defendants produced the requested documents on July 9, 2013. See Dkt. #49.

The summary judgment motion is now fully submitted and ready for decision, as is the motion to compel.

## II. Background

Rosales was elected as a representative on the Inmate Grievance Program ("IGP") at Wende Correctional Facility ("Wende") on July 28, 2006. Also on July 28, 2006, Rosales filed a grievance against defendants Ken Kielisvek, IGP Supervisor ("IGPS Kielisvek") and Lawrence Higley, Inmate Grievance Sergeant ("Sgt. Higley") raising allegations of harassment and retaliation. Wende Superintendent Robert Kirkpatrick ("Sup't Kirkpatrick")

acknowledged receipt of the grievance and stated that an investigation would be conducted. Sup't Kirkpatrick noted that to his knowledge, Rosales was treated in the same matter that all new IGP inmate representatives are treated, insofar as he met with IGPS Kielisvek and Sgt. Higley to be welcomed to the IGP, and was provided appropriate orientation in which the Inmate Grievance Resolution Committee ("IGRC") Code of Ethics was reviewed.

On August 2, 2006, Rosales attended an IGP meeting, also attended by Ryan English, Albany Inmate Grievance Program Coordinator; Sgt. Higley; Supervisor Kieliszek; and another new inmate representative. After the meeting, Rosales and the other new representative were given the opportunity to ask any questions and voice concerns. According to William R. Smith, Deputy Superintendent for Program Services ("DSPS Smith", Rosales was asked repeatedly if he had any concerns, and each time he said that he no longer had any issues, and that all his complaints had been resolved. DSPS Smith notified Rosales' wife, Barbara Rosales ("Mrs. Rosales") of what transpired at the meeting in an attempt to assuage her concerns about her husband.

On September 13, 2006, Mrs. Rosales filed a complaint detailing threats allegedly made towards her husband by Sgt. Andrusz, and Correction Officers Mann ("CO Mann"), Benson ("CO Benson") and Turnbull ("CO Turnbull") in B-Block. According to Rosales, these officers had been continuously harassing him since

he became an IGP representative. In particular, Rosales claimed, the harassment was directly related to his filing of complaints about threats allegedly made by Sgt. Higley.

On October 24, 2006, Rosales was written up in a misbehavior report by CO Benson based upon an incidents which occurred while he and nine other inmates were being escorted to the special housing unit ("SHU") from the Regional Medical Unit ("RMU") at about 10:45 a.m. According to CO Benson, he gave the inmates a verbal direction not to talk and to maintain formation. Because Rosales was talking loudly, however, CO Benson was forced to stop the group. CO Benson asked Rosales if he understood his order not to talk while being escorted. Rosales stepped out of formation, walked toward CO Benson, and stated in a "loud[,] threatening tone[,]" "'I want your name!'" CO Benson issued two direct orders to Rosales to get back into formation and stop talking. Although Rosales initially complied, he began talking loudly again as they were passing Building #6.

Sgt. Andrusz was walking near the building's rear dock and encountered CO Benson and his group of inmates. Rosales approached Sgt. Andrusz and yelled, "'I want that officer's name right now or I'm writing up you and him both!'" Sgt. Andrusz ordered Rosales to return to formation, but Rosales instead pulled out a pen and approached CO Benson again. CO Benson ordered Rosales to return to formation.

At this point, the other inmates turned around and began falling out of formation because Rosales had walked between several of them. Sgt. Andrusz and CO Benson returned the inmates to formation and Rosales followed suit. Rosales and the rest of the inmates were returned to B-Block without further incident.

CO Benson filed a misbehavior report against Rosales charging him with the following infractions: Rule 104.13 (creating a disturbance); Rule 107.10 (interference with employee); Rule 107.11 (harassment); Rule 106.10 (refusing direct order); and Rule 102.10 (making threats).

Commissioner's Hearing Officer Kennedy ("CHO Kennedy") conducted the Tier III disciplinary hearing on CO Benson's misbehavior report. CHO Kennedy was forced to obtain several extensions of the hearing because he was not satisfied with the level of employee legal assistance Rosales had received. At the conclusion of the hearing on November 22, 2006, CHO Kennedy found sufficient evidence on the charges of creating a disturbance, interference with an employee, refusing a direct order, and making threats. CHO Kennedy found the evidence insufficient to support the harassment charge, however. The sanctions recommended were four months in SHU from the date of the incident (October 24, 2006), until February 24, 2007; the loss of package, commissary and phone privileges for this four-month period; and removal from the IGRC for a two-year period.

Rosales pursued an administrative appeal of the guilty finding. Donald Selsky, Director of Special Housing/Inmate Disciplinary Program ("Director Selsky"), reviewed the Superintendent's hearing and affirmed it on February 9, 2007. Reconsideration was denied on February 26, 2007.

Rosales then instituted a proceeding pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Article 7803, arguing that he was denied adequate employee and prisoner legal assistance, in violation of 7 N.Y.C.R.R. § 251-4.2; he was denied the right to call witnesses because he was denied the necessary assistance to ascertain the names of inmate witnesses such that they could be interviewed, and he was denied certain other witnesses for insufficient reasons, in violation of 7 N.Y.C.R.R. § 254.5(a); he was denied certain documents relevant to his defense, in violation of 7 N.Y.C.R.R. § 254.6(c); and the hearing officer obtained extensions in violation of 7 N.Y.C.R.R. § 251-5.1.

On October 26, 2007, Acting Justice Shirley Troutman of New York State Supreme Court (Erie County) granted the Article 78 petition, annulled the adverse disciplinary finding, and remitted the matter to DOCCS for further proceedings. A.J. Troutman found that there was a lack of substantial evidence supporting the guilty determination and that a reasonable effort had not been made to identify and interview potential witnesses. On November 9, 2007,

Rosales' disciplinary hearing was reversed by Director Selsky. All references to it were expunged from his record.

## III. General Legal Principles

### A. 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish the following elements: (1) conduct attributable at least in part to a person acting under color of state law; and (2) deprivation, as the result of the challenged conduct, of a right, privilege, or immunity secured by the Constitution or laws of the United States. Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)).

### B. Summary Judgment

Summary judgment pursuant to F.R.C.P. 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" only if it has some effect on the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also, e.g. Bryant v. Maffucci, 923 F.2d 979 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." Bryant, 923 F.2d at 982 (internal quotation omitted). As the Second Circuit has observed,

> [a] party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

Pursuant to F.R.C.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial."

Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

## IV. Discussion

### A. Denial of Procedural Due Process at the Disciplinary Hearing

To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, the reviewing court must find that, as the result of conduct performed under color of state law, the inmate was deprived of life, liberty, or property without due process of law. Bedoya v. Coughlin, 91 F.3d 349, 351 (2d Cir. 1996). It is undisputed that CHO Kennedy acted under color of state law. The remaining inquiry comprises two prongs: (1) whether Rosales had a protected liberty interest in not being confined pursuant to the SHU sentence he served; and, if so, (2) whether the deprivation of this liberty interest occurred without due process of law. Id. at 351-52 (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460-61 (1989)). Defendants have assumed arguendo that Rosales had a protectible liberty interest in being free from the SHU sentence imposed by CHO Kennedy following the disciplinary hearing, and the Court has done the same.

Due process under the Fourteenth Amendment requires that an inmate charged with a disciplinary violation be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by

the hearing officer as to the evidence relied on for his decision, and the reasons for the disciplinary action taken. Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986), reh'g en banc denied, 826 F.2d 194 (2d Cir. 1987), cert. denied, 485 U.S. 982 (1988) (citing Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974)). Upon determining that these procedural due process requirements have been met, the reviewing court must determine "whether there is *some* evidence which supports the decision of the prison disciplinary board." Id. at 954-55 (citing Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 453-55 (1985) (emphasis added)).

Plaintiff contends that he was not given sufficient assistance in identifying witnesses; that he was denied the right to call other witnesses based on the hearing officer's erroneous conclusions that they were unavailable or their testimony would be redundant; and that he was denied certain documents relevant to his defense. The state court found that Rosales had not received a "meaningful hearing" because he was "not given adequate assistance or a reasonable opportunity to locate unknown inmate witnesses to the incidents." Article 78 Decision at 5 (Dkt #49). The state court found that since the only evidence on which the hearing officer relied was that offered by the complaining witness (CO Benson), the "result was arbitrary and the manner in which the requests pertaining to the incidents was handled violated due procedure and constituted an abuse of discretion which clearly prejudiced [him]."

Article 78 Decision at 6 (citing Matter of Shipman v. Coughlin, 98 A.D.2d 823 (3d Dept. 1983)).

With regard to the claim that Rosales was not supplied with the "evidence requested on the issue of motive and lack credibility[,]" the state court found it to be "without merit as the evidence adduced on this issue was sufficient . . . despite the lack of significant portions of it." Article 78 Decision at 6. The state court found that additional evidence "along those lines" would have been redundant, and Rosales was not prejudiced by its absence. Id.

The fact that the state court reversed Rosales' disciplinary hearing is not dispositive, because the standard applied by New York State courts in reviewing prison disciplinary proceedings is much stricter than the applicable standard in a § 1983 proceeding. See Sira v. Morton, 380 F.3d 57, 76 n. 9 (2d Cir. 2004) ("New York law requires prison disciplinary rulings to be supported by sufficiently relevant and probative information to constitute substantial evidence. This requirement is stricter than the 'some evidence' standard necessary to afford due process." ) (internal and other citation omitted); see also id. (stating that the administrative reversal of inmate's disciplinary hearing did not automatically establish his federal claim). In general, a court reviewing a § 1983 complaint "should not overturn a prison disciplinary board's finding of guilt if there is *any* evidence to

support the board's conclusion." Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988) (citing Hill, 472 U.S. at 455-56; Freeman, 808 F.2d at 955; emphasis in original). "Ascertaining whether th[e] ['some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 454.

In Hill, respondents-inmates were disciplined for assaulting another inmate based upon the testimony of a prison guard who observed a bloodied inmate with a swollen eye lying on the ground, and three other inmates jogging away from the area, which was enclosed by a chain-link fence. No other inmates were present. Id. at 447-48. Conceding that "the evidence . . . might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant," the Supreme Court upheld the disposition because the record was "not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Id. at 457. It bears noting that the "substantial evidence" standard that must be met in the context of a proceeding pursuant to C.P.L.R. Article 78 places a much heavier burden on prison officials. Contrast Gaston v. Coughlin, 182 A.D.2d 1085, 582 N.Y.S.2d 878 (4th Dept. 1992) (granting Article 78 petition because the "proof [did] not constitute substantial evidence and is insufficient to support the determination") with Gaston v. Coughlin, 249 F.3d 156, 163-64

(2d Cir. 2001) (affirming dismissal of inmate's § 1983 due process claim; noting "[it] cannot conclude that there was not 'some evidence' to support the hearing officer's ruling"); see also Nicholas v. Davis, 74 F. App'x 131, 134, 2003 WL 22056224, at *2 (2d Cir. Sept 4, 2003) (unpublished opn.) (fact that disciplinary determination against inmate was administratively overturned based upon lack of evidence does not establish due process violation because "substantial, rather than 'some,' evidence was required" under state law) (citation omitted).

Although the incriminating evidence against Rosales was direct, rather than circumstantial as was the case in Hill, it was offered only by interested witnesses–the two corrections officers involved in the incident. However, the judge in the Article 78 proceeding specifically found that adequate evidence was presented regarding Rosales' defense that he was a target of harassment based upon his activism as an IGP representative, and that the misbehavior report was issued in retaliation for his filing of complaints against Sgt. Higley. The evidence directly supporting the charges in the misbehavior report may have been less than overwhelming, but the record was "not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary[,]" Hill, 472 U.S. at 457; see also Nicholas, 74 F. App'x at 134 ("[W]here prison officials had credible cause to fear a major and coordinated act of civil disobedience in the

prison, such a letter, along with the statements that the plaintiff made to the *Village Voice*, suffice-if barely-as "some evidence," that plaintiff was organizing or encouraging other inmates to participate in such a strike.") (internal citation omitted). Measured in light of the Supreme Court's pronouncements in Hill, the "some evidence" standard was met in Rosales' case.

With regard Plaintiff's other claims of constitutional error at the disciplinary hearing, e.g., inadequate legal assistance in assisting him in discovering the names of witnesses and obtaining their testimony, the Court finds that any alleged deficiencies amount to harmless error not warranting denial of summary judgment. See Hernandez v. Selsky, 572 F. Supp.2d 446, 454 (S.D.N.Y. 2008) ("[A]ssuming the employee assistant provided at least some assistance, 'the adequacy of inmate assistance is subject to harmless error analysis.'") (quotations omitted; citing Powell v. Coughlin, 953 F.3d 744, 750 (2d Cir. 1991) ("If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.") (citations omitted).

**B.    First Amendment Retaliation Claim**

"Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); other citation omitted). A plaintiff asserting a First Amendment retaliation claim must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes, 239 F.3d at 492. Since the filing of prison grievances is a constitutionally protected activity, Rosales meets the first prong of the test. Davis, 320 F.3d at 352-53 (citations omitted). The Court accordingly turns to the second and third prongs of the test set forth in Dawes, 239 F.3d at 491, namely, whether Rosales suffered an adverse action and whether there was a causal connection between the events in question.

Rosales asserts that the misbehavior report issued by CO Benson on October 24, 2006, was made in retaliation for his July 28, 2006 grievance against IGPS Kielisvek and Sgt. Higley alleging

that these individuals harassed him and retaliated against him for his actions as an IGP representative. Defendants argue that there is no proof that IGPS Kielisvek and Sgt. Higley "chilled [his] exercise of a constitutionally protected right or were causally linked to an adverse action taken by them [sic]." Defendants' Memorandum of Law at 6. Defendants cite cases standing for the proposition that the passage of time between the protected activity and the adverse action can defeat a plaintiff's ability to establish a causal connection. Id. (citations omitted).

Contrary to Defendants' suggestion, the appropriate test is not whether Rosales himself was chilled, for if that were the standard, it is unlikely that any plaintiff could prevail. The plaintiff's continued filing of grievances or commencement of a lawsuit, such as the instant one, could be used by prison officials to argue that the inmate was not chilled. Rather, the test is whether the allegedly retaliatory conduct "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional right." Dawes, 239 F.3d at 493. The Court need not resolve these issues surrounding the "adverse action" component of the test, because Rosales has failed to raise a genuine issue of material fact as to causation.

A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. Espinal v. Goord, 558

F.3d 119, 129 (2d Cir. 2001) (citations omitted)). The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001). Compare Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's EEOC complaint, was in response to the plaintiff's protected activity) with Gorman-Bakos, 252 F.3d at 555 (suggesting the lapse of five months between protected activity and retaliation may show a causal connection where plaintiffs provided evidence of exercises of free speech and subsequent retaliatory actions occurring between December 1997 and April 1998).

Here, two months and 26 days (88 days) elapsed between Rosales' protected activity (the July 28, 2006 grievance) and the allegedly adverse action (the October 24, 2006 misbehavior report). In this Circuit, claims of retaliation are routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation. Nicastro v. Runyon, 60 F. Supp.2d 181, 185 (S.D.N.Y. 1999) (citing, inter alia, Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp.2d 414, 436 (S.D.N.Y. 1998) (two-and-a-half months between employee's protected activity and

discipline insufficient to establish a causal link)); see also Ruhling v. Tribune Co., No. CV 04-2430(ARL), 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (collecting cases).

In Ponticelli, the district court found that even if the terminated plaintiff could show that the employer was aware of her complaints of sexual harassment, she offered no evidence from which a reasonable jury could find that the decision to terminate her was causally connected to her prior complaints. 16 F. Supp.2d at 436. In particular, the person about whom she complained, and the person with whom she registered her complaint, had nothing to do with her termination. Id. The district court found it significant that the plaintiff's complaint was made at least two-and-a-half months before her termination, which was "hardly the close proximity of time contemplated by Manoharan [v. Columbia Univ. College of Physicians and Surgeons, 842 F.2d 590 (2d Cir. 1988)], for allowing a plaintiff to establish the 'causal connection' element of retaliation claim.").

This case is similar on the facts to Ponticelli. The elapsed time here was only a few days shy of three months. On the issue of temporal proximity, then, this case appears to be on the borderline when compared to other district court cases in this Circuit. As in Ponticelli, there is no evidence–apart from the temporal proximity–from which a reasonable jury could find that the misbehavior report was causally connected to Rosales' filing of

grievances. Neither of the officers (Sgt. Andrusz and CO Benson) involved in the underlying incident were on the IGRC or otherwise connected with the IGP. Sgt. Andrusz stated that he had no previous interaction with Rosales and had not been told anything about Rosales by Sgt. Higley, the subject of Rosales' grievance. Sgt. Higley denied involvement with the misbehavior report and stated that he never told CO Benson or Sgt. Andrusz "to get rid of" Rosales. See Defendants' F.R.C.P. 26 Disclosure, Dkt. #30, Bates #000137-138). Under the present circumstances, summary judgment on Rosales' retaliation claim is appropriate because he has not established a genuine issue of material fact on the element of causation.

## V.  Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (Dkt #34) is granted, and Plaintiff's complaint (Dkt #1) is dismissed with prejudice. Plaintiff's motion to compel (Dkt #40) is dismissed as moot. The Clerk of the Court is requested to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   July 24, 2013
         Rochester, New York