UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUIS ROSALES,

                          Plaintiff,

    -vs-                           **DECISION AND ORDER**
                                       **No. 6:08-cv-6113(MAT)**
DONALD SELSKY, Director Special
Housing, et al.,

                          Defendants.

---

### I. Introduction

This action, filed under 42 U.S.C. § 1983, arises from a October 24, 2006, misbehavior report filed against Luis Rosales ("Plaintiff"), an inmate at Wende Correctional Facility ("Wende"). Following a disciplinary hearing, Plaintiff was found guilty of the charges and sentenced to 120 days confinement in the Special Housing Unit ("SHU") and other lesser penalties. Plaintiff alleged that (1) the misbehavior charges were false and filed in retaliation for a series of grievances he filed against Wende officials, and (2) his due process rights were violated during the disciplinary hearing because he did not receive adequate assistance in preparing a defense, he was not informed of a witness, Mohamed Abbas ("Abbas"), to the incident who asked to testify regarding his "innocence," and he did not have a meaningful hearing before being sentenced to SHU confinement. This Court granted summary judgment to Defendants on both claims, and Plaintiff appealed.

On March 26, 2015, the United States Court of Appeals for the Second Circuit issued a decision and order (Dkt #54) vacating the Court's judgment dismissing Plaintiff's complaint, and remanding the matter for further proceedings. See Rosales v. Kikendall, No. 13-3197-pr, 605 F. App'x 12 (2d Cir. 2015) (summary order).[1] With regard to Plaintiff's First Amendment retaliation claim, the Second Circuit held that "triable issues of fact exist as to whether there was a causal link between the grievances and the misconduct claim." Rosales, 605 F. App'x at 13-14. With regard to the denial of adequate inmate assistance in investigating and interviewing witnesses, the Second Circuit held that there are "disputed issues of act about whether any violations of [Plaintiff's] procedural due process rights were harmless." Id. at 14-15. As to his claim that Captain Kearney ("Kearney") failed to disclose an a purportedly exculpatory letter written by fellow inmate Abbas ("the Abbas Letter"), the Second Circuit held that the Court should have considered Plaintiff's opposition memorandum of law as a constructive motion to amend his complaint, which had not attached a copy of the letter. Id. at 15. Because this Court had dismissed the claim based on Plaintiff's failure to state in his complaint what the inmate's proposed testimony would have been, it had not considered the defense of qualified immunity. The Second

---

[1] Plaintiff initiated this lawsuit pro se but currently is represented by the attorneys who represented him in connection with his appeal to the Second Circuit.

Circuit accordingly directed the Court, on remand, to consider whether Kearney was entitled to qualified immunity on this claim.

Based on the Second Circuit's order, the Court requested additional briefing from the parties on several issues, including (1) the effect, if any, on the outcome of the disciplinary hearing, had the hearing officer considered the Abbas Letter that Kearney received; and (2) whether Kearney is shielded by qualified immunity with respect to Plaintiff's claim that Kearney erroneously failed to turn over the letter he received from Abbas. Kearney submitted a Memorandum of Law (Dkt #61) in response to the Court's Order. Plaintiff submitted a Memorandum of Law (Dkt #62) and a Declaration (Dkt #63) attaching various Exhibits (Dkt ##63-1 through 63-5). The Court assumes the parties' familiarity with the underlying facts. Pertinent facts will be discussed in further detail below, as necessary to the Court's resolution of the issues relevant to the Second Circuit's remand.

**II. Discussion**

    **A.    Background Regarding the Abbas Letter**

On October 24, 2006, Plaintiff sent a letter to Superintendent Kirkpatrick complaining that the misbehavior report issued that day was done in retaliation for Plaintiff's filing of grievances. Superintendent Kirkpatrick referred the complaint to Kearney, who referred it to Lieutenant Herdzik, the on-duty Watch Commander, for investigation. On October 31, 2006, Kearney sent a memo to

Superintendent Kirkpatrick stating that during the course of the investigation, "no witnesses came forward" and "no facts were found to support" Plaintiff's allegations. Dkt #63-4. Kearney concluded that there was "no merit" to Plaintiff's complaint; rather, "it appear[ed] [Plaintiff] is attempting to file an appeal to a hearing that has not been held." Dkt #63-4. Kearney issued a memo to Plaintiff on November 4, 2006, stating that the investigation revealed no support for Plaintiff's allegations of retaliatory treatment. See Dkt. #63-4.

Meanwhile, on November 4, 2006, Abbas sent his letter to Kearney, which he stated was the "2nd letter regarding the Latino inmate [i.e., Plaintiff] who work [sic] at the Grievance office. . . . I don't no [sic] how to write his name." Dkt #63-5. Abbas went on to state that Plaintiff "got writting [sic] up . . . just because he ask the officer for his name." Id. According to Abbas, Plaintiff

> ask [sic] the tall sgt [his name] when we are entering 6 building[.] Then the tall sgt told the Latino inmate to ask the officer again for his name and when the Latino ask for his name, the officer reply and told him "You are inmate" "Do [sic] don't got nothing" [illegible] the tall sgt told the officer "you to write him up" The officer say? Yaes [sic]. When we stop at B-block, then the escort officer told B-block staff, the inmate with eye glass is keep lock?
> I would like to testifay [sic] in this hearing because this Latino inmate is innocent and this racism and discrimination against all minority in this Wende prison. . . .

Dkt #63-5. Kearney did not pass along this letter to Plaintiff or the assigned hearing officer.

### B. Qualified Immunity

Once qualified immunity is pleaded, as it has been in this Section 1983 action, public officials performing discretionary functions are protected from personal liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, even where such rights are clearly established, "qualified immunity . . . protects a government official 'if it was objectively reasonable for [the official] to believe that his acts did not violate those rights.'" Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990) (quoting Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).

For a right to be "clearly established" for purposes of qualified immunity, "it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." Russell, 910 F.2d at 78 (citing Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989)); see also Anderson, 483 U.S. at 640. Furthermore, a law is considered "clearly established" so long as this "circuit's decisions 'clearly foreshadow' a particular ruling on the issue." Varrone, 123 F.3d at 79 (quoting Shabazz v. Coughlin, 852 F.2d 697, 701 (2d Cir. 1988)). "Decisions of other circuits also may indicate whether the law was

clearly established." Varrone v. Bilotti, 123 F.3d 75, 79 (2d Cir. 1997) (law clearly established where three other circuits had established standard in question, and Second Circuit's decisions had foreshadowed it) (citing Weber v. Dell, 804 F.2d 796, 803–804 (2d Cir. 1986) (finding right clearly established where "[a]t least eleven circuit court decisions, three of them antedating the search in this case, hold similar policies unconstitutional" and Second Circuit cases foreshadowed a similar ruling), cert. denied, 483 U.S. 1020 (1987)); accord Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010).

This Court's research indicates that, to date, only the Seventh Circuit specifically has "held that the rule of Brady v. Maryland, 373 U.S. 83 (1963), requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings." Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003) (citing Chavis v. Rowe, 643 F.2d 1281, 1285-86 (7th Cir.), cert. denied, 454 U.S. 907 (1981); Campbell v. Henman, 931 F.2d 1212, 1214–15 (7th Cir. 1991) (per curiam); other citation omitted); Duarte v. Turner, 46 F.3d 1133 (Table), 1995 WL 57187, at *2 (7th Cir. Feb. 10, 1995). In Chavis, the case that announced the applicability of Brady in the prison disciplinary setting, the Seventh Circuit found that the prisoner had been denied the minimum due process requirements mandated by Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974), where the prison disciplinary committee failed to provide him access to

an investigatory report containing exculpatory witness statements. Chavis, 643 F.2d at 1286-87. Even though the committee considered the report when making its ruling, the Seventh Circuit nevertheless found that the prisoner was "deprived of his ability to make his own use of this exculpatory evidence before it was given to the fact-finders." Id. at 1286. The Seventh Circuit noted, "[i]t appears that *simple fair play* required disclosure to him of the exculpatory material or its substance. . . ." Id. (emphasis supplied).

Here, the Court need not reach the issue of whether the rule of Brady applies in the prison disciplinary context. Under Second Circuit precedent, the non-disclosure of the Abbas Letter may be analyzed in view of the general constitutional obligation owed by prison officials "to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988). The Second Circuit has emphasized that where, as here, the inmate is disadvantage by confinement in SHU, the legal assistance provided to him "should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses; "[a]t a minimum," the assistant should perform "the investigatory tasks which the inmate, were he able, could perform for himself." Id. at 897-98 (citations omitted). The contents of the Abbas Letter, which included an assertion by an eyewitness to the incident that he

wanted to testify on Plaintiff's behalf, clearly is information relevant to Plaintiff's ability to investigate the charges, marshal a defense, and interview witnesses. Turning over the Abbas Letter either to Plaintiff or to the assigned hearing officer would not have obliged Kearney "to go beyond the specific instructions of the inmate" and "act[ ] as counsel in a prison disciplinary proceeding," Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993), because Abbas identified himself as an eyewitness and affirmed that he wanted to testify at the disciplinary hearing. It is true that Kearney was not assigned to act as Plaintiff's employee legal assistant. If the right to assistance is to mean anything, prison officials such as Kearney, who have actual notice of pending, disciplinary charges against an inmate, cannot simply ignore relevant information that comes across their desks on the basis that they were not directly involved in the underlying incident or the hearing itself.

In sum, the Court cannot find that Kearney is shielded by qualified immunity with regard to his failure to disclose to Plaintiff the Abbas Letter, which contained the identity of an eyewitness willing to testify on Plaintiff's behalf. Although this Court is of the opinion that based on the contents of the letter, Abbas' proposed testimony would not have been materially exculpatory, the Second Circuit has held there are disputed issues of fact about whether any violations of Plaintiff's due process

rights in connection with the hearing, including the failure to call Abbas as a witness, were harmless. <u>Rosales</u>, 605 F. App'x at 15.

**III. Conclusion**

For the reasons discussed above, the Court finds that Kearney is not entitled to the affirmative defense of qualified immunity with regard Plaintiff's claim that procedural due process rights were violated by Kearney's failure to provide him with the Abbas Letter.

**SO ORDERED.**

S/Michael A. Telesca
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   November 24, 2015
         Rochester, New York.